JAMES E. LUCE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Luce v. Commissioner
Docket No. 10613-78
United States Tax Court
T.C. Memo 1982-614; 1982 Tax Ct. Memo LEXIS 128; 44 T.C.M. (CCH) 1475; T.C.M. (RIA) 82614; October 21, 1982. J. Keith McGregor, for the petitioner. Marion Malone, for the respondent. COHEN
MEMORANDUM OPINION COHEN, Judge:* Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: Additions to Tax
Year
I.R.C. 1954
Ended
Deficiencies
[1] Section 6653(a) 1970
$4,028
$201
1971
6,601
330
1972
43,948
2,197
1973
105,802
5,290
*129 The issues presented for decision are: (1) Whether certain amounts received by petitioner in 1970, 1971, 1972, and 1973, in transactions leading to petitioner's conviction of grand theft, constituted taxable income or nontaxable loans; and (2) whether petitioner's underpayment of Federal income tax for the years 1970, 1971, 1972, and 1973 was the result of negligence or intertional disregard of the law within the meaning of section 6653(a). All of the facts have been stipulated, and the stipulation of facts and exhibits attached thereto are incorporated here by this reference. During the taxable years in question, petitioner James E. Luce filed joint income tax returns with his wife, Carolyn P. Luce, with the Internal Revenue Service Center in Fresno, California. Respondent determined that the innocent spouse provisions of section 6013(e) applied to Mrs. Luce and did not determine a deficiency against her. Petitioner resided at Glendale, California, at the time the petition herein was filed. Prior to and including the greater part of 1970, petitioner was employed by the Atlantic Richfield Company (Atlantic Richfield). He went to work for the Fluor Corporation shortly *130 before the end of that year, and he worked there through the taxable years involved in this case. In approximately 1968 petitioner began soliciting friends and co-workers to invest in a stock option purchase plan that he allegedly had access to through his employment and prior employment. As a result of these solicitations, he obtained the funds determined by respondent to constitute unreported income as well as other funds not included in respondent's computations. One of the participating investors demanded and received stock. Others demanded and received their money back. For the most part, however, the promised investments were never made and, on December 3, 1973, petitioner was charged with five counts of grand theft. On December 4, 1973, petitioner pled guilty to one of the five counts. In August 1974, petitioner was ordered to make restitution in the amount of $312,186. None of the amounts determined by respondent to constitute unreported income were repaid to the investors during the taxable years here involved.
Respondent, in his notice of deficiency, determined that petitioner received unreported taxable income from the investors in 1970 in the amount of $14,036; *131 in 1971 in the amount of $24,700; in 1972 in the amount of $122,513; and in 1973 in the amount of $211,130. [2] In addition, respondent reduced petitioner's medical expense deductions for tax years 1970, 1971, 1972, and 1973 by $421, $741, $572, and $1,575, respectively, because of the increase in the amount of petitioner's adjusted gross income. The language of section 61, "all income from whatever source derived," has been held to encompass within the definition of gross income all "accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." . A gain "constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it." *132 . As the Supreme Court stated in : When a taxpayer acquires earnings, lawfully or unlawfully, without the consensual recognition, express or implied, of an obligation to repay and without restriction as to their disposition, "he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." North American Oil Consolidated v. Burnet,supra, 286 U.S. at page 424, 52 S.Ct. at page 615. In such case, the taxpayer has "actual command over the property taxed--the actual benefit for which the tax is paid," Corliss v. Bowers,supra. This standard brings wrongful appropriations within the broad sweep of "gross income"; it excludes loans. * * * This rule has been repeatedly applied. See ; ; ; *133 ; . Petitioner characterizes the financial transactions as loans. He has failed, however, to present evidence -- persuasive or otherwise -- that would support this characterization. At the hearing of this matter, the parties agreed to submit the case as fully stipulated pursuant to Rule 122. Petitioner then attached to his brief copies of additional documents, "trust agreements" allegedly executed by petitioner and by certain of the investors, which he cites in support of his contention that the funds were received as loans. Petitioner did not seek or receive leave of the Court to so supplement the record, and these documents could be totally disregarded. See Rules 122(b), 149(b) and 151(e)(3). But, in any event, they do not evidence "loans" in form or in implied intent. The agreements state that acquisition of certain stock is the purpose of the transfer of funds from the investor to petitioner and that the funds are to be returned if the stock is not purchased. The agreements do provide for "interest" from the date of the "trust" to the date *134 of return if the stock is not purchased by a specified date. The obligation to return the funds arises upon the failure to purchase on the date specified. The use of the term "trust" and the express language of the agreement establish an intent that the funds are to be used solely for the benefit of the transferor, in contrast to a "loan" transaction in which funds are to be used for the benefit of the borrower.[3] When petitioner converted the funds to his own use contrary to the terms of the agreement, he exercised such dominion over them as to realize taxable income. Petitioner has not met his burden of proving that there existed a "consensual recognition, express or implied, of an obligation to repay" the sums advanced. In effect he repudiated such obligation when he did not return the funds after failing to acquire the stock. If the result of his activity was to obtain funds far exceeding *135 his ability to repay the investors, it could readily be inferred that he did not intend to repay them. See . The fact that certain sums were repaid does not prove petitioner recognized an obligation to repay; rather, it suggests that he recognized the probability that unhappy customers would deter other investors or disclose the nature of petitioner's activity. The fact that petitioner was ordered as part of his criminal sentence to make restitution to his victims similarly does not demonstrate that a recognized obligation to repay existed in 1970, 1971, 1972, or 1973. Petitioner always had a legal obligation to repay; a court-imposed recognition of this fact in 1974 after criminal prosecution does not provide the consensual recognition necessary in the years in issue. . Petitioner cites In , for the proposition that petitioner did not realize an economic benefit from the loans because the money received from new investors was used to repay prior investors. In that *136 case the taxpayer was a corporation established by three individuals as a conduit for funds fraudulently obtained. For some time, prior note holders were satisfied with funds obtained from new lenders. The corporation then became brankrupt. The Referee in bankruptcy found that the taxpayer corporation did not receive any economic benefit as a result of the loans, and the District Court adopted this as well as other findings and held the corporation had not received taxable income. The Court of Appeals affirmed the holding, commenting that any economic benefit actually went to the individuals who ran the corporation, conducted the fraud, and made personal use of the funds not used to satisfy the corporation's debts. Only when the individuals diverted the funds from the corporation did the loans become taxable income -- taxable to the individuals. . The government was after the wrong party. Such is not the case here.
Because petitioner asserted dominion over and derived an economic benefit from the funds received from the investors, without timely consensual recognition of his obligation to repay the funds, *137 we conclude that such funds constitute taxable income. Petitioner did not present evidence on the additions to tax or address them in his brief. The burden of proving that an underpayment was not due to negligence is upon petitioner. ; ; Rule 142(a). Accordingly, we also find for respondent on this issue. Decision will be entered for the respondent.
Footnotes
*. By order of the Chief Judge, this case was reassigned from Judge Richard C. Wilbur to Judge Mary Ann Cohen for disposition.↩
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. All references to Rules are to the Tax Court Rules of Practice and Procedure.↩
2. The difference between the total amount of the court-ordered restitution and the total unreported income determined by respondent is apparently attributable to claims not filed in the criminal proceeding by investors and the inclusion in the order of restitution of the amount of an unrelated transaction. Petitioner has not disputed respondent's calculations.↩
3. The only reference in the documents to a "loan" is to a loan between petitioner and a bank, for which one investor provided collateral. The term "loan" was not applied to the relationship between petitioner and the investor.↩